OPINION OF THE COURT
Rosenblatt, J.
This appeal concerns the statutory time period within which the Division of Parole must conduct a preliminary parole revocation hearing. Petitioner, a New York State parolee, was convicted of federal bank robbery. While he was incarcerated in an out-of-state federal prison, the Division of Parole lodged a parole revocation detainer against him. Thereafter, to resolve a federal sentencing issue, federal authorities temporarily housed him in New York jails. Petitioner claims he was entitled to a timely preliminary revocation hearing upon being brought here. In opposition, the Division of Parole contends that, pursuant to Executive Law § 259-i (3) (a) (iv), it had no obligation to hold a hearing until petitioner completed serving his federal sentence and was available for extradition. We agree with the Division of Parole.
In 1992, while petitioner was on New York State parole following an Onondaga County conviction, federal law enforcement agents arrested him for committing a bank robbery in Schenectady. He was convicted in the United States District Court for the Northern District of New York and on March 1, 1993 was sentenced to 135 months in prison. In June 1993, the Division obtained a parole violation warrant and lodged a detainer with federal authorities at Leavenworth Penitentiary in Kansas where petitioner was imprisoned. In March 1994, federal authorities transferred petitioner to Allenwood Penitentiary in Pennsylvania and notified the Division that the detainer had accompanied him there, pending his tentative release date of November 26, 2001.
Soon after this transfer, the United States Court of Appeals for the Second Circuit vacated petitioner’s sentence and *643 remanded the case to the District Court for resentencing (see, United States v Matthews, 20 F3d 538). In July 1994, without informing the Division, federal authorities brought him to New York for that purpose. Though he remained in federal custody, petitioner was housed in a number of county jails in New York from July 1994 until his resentencing on November 21, 1996. Thereafter, federal authorities brought petitioner back to Allenwood and notified the Division that his release date had been moved up to September 8, 1997. He served out the remainder of his sentence in Pennsylvania and was then taken into New York’s custody in accordance with the Division’s warrant. On April 8, 1997, while still at Allenwood, petitioner filed a habeas corpus petition in Supreme Court, Onondaga County. He sought to lift the parole violation detainer on the ground that he had been in various New York jails for more than two years but had not been accorded a preliminary parole revocation hearing.
Executive Law § 259-i (3) (c) (i) mandates that the Board of Parole accord an alleged parole violator a preliminary revocation hearing “[w]ithin fifteen days after the [parole violation warrant] and temporary detention has been executed” (emphasis added). Failure to conduct a timely preliminary revocation hearing violates the parolee’s right to due process unless the Division is able to establish that it could not conduct a hearing because the parolee was beyond its “convenience and practical control” (see, Matter of Vasquez v New York State Bd. of Parole, 58 NY2d 981, 983; People ex rel. Gonzales v Dalsheim, 52 NY2d 9, 12).
Opposing the writ, the Division argued that the 15-day period did not begin to run until the parole violation warrant was “executed” within the meaning of Executive Law § 259-i (3) (a) (iv). That section provides that when a parolee is “detained in another state” pursuant to a parole violation warrant, the warrant will not be “deemed to be executed” until the parolee is detained exclusively on the basis of that warrant and is available for extradition. Thus, according to the Division, the parole violation warrant could not have been “executed” until September 8, 1997 — the date the federal sentence ended.
Supreme Court held that Executive Law § 259-i (3) (a) (iv) did not avail the Division because from July 1994 until November 1996 petitioner was not “detained in another state.” The court nevertheless dismissed the petition, finding that petitioner had not been subject to the Division’s “convenience and practical control” when he was held in New York jails *644 awaiting resentencing in federal court.[1] Over a two-Justice dissent, the Appellate Division reversed, holding that the Division failed to meet its burden of showing that petitioner was beyond its convenience and practical control.[2] The dissenters asserted that Executive Law § 259-i (3) (a) (iv) governed and that the 15-day time period did not begin until petitioner completed his federal sentence and the Division received the necessary notification regarding extradition. We agree with the dissenters.
Prior to 1984, when an alleged parole violator was incarcerated in another state, a parole violation warrant was deemed to have been “executed” — and the 15-day period began to run — as soon as the detainer was lodged in the out-of-state prison (see, People ex rel. Gonzales v Dalsheim, 52 NY2d 9, 13, supra; see also, People ex rel. Eng v Coughlin, 111 AD2d 1026, 1028; cf., Crime Victims Board Mem, Bill Jacket, L 1984, ch 435). Because the parolee was in another state, the Division was often unable to hold a preliminary revocation hearing within this tight time frame. The parolee would win habeas corpus relief unless the Division could demonstrate that the individual was beyond its “convenience and practical control” (compare People ex rel. Eng v Coughlin, supra, with People ex rel. McNamee v Infante, 116 AD2d 893, 894-895). To meet this burden, the Division was obligated to establish on a case-by-case basis why it was unable to accord the out-of-state parolee a hearing, as for example, a sister state’s “reluctance or unwillingness” to cooperate or “significant practical difficul *645 t[ies]” in arranging the parolee’s presence at the hearing (see, People ex rel. Gonzales v Dalsheim, supra, at 15).
In 1984, the Legislature enacted Executive Law § 259-i (3) (a) (iv) to facilitate the prosecution of parole violators held in out-of-state facilities.[3] It provides that
“[w]here the alleged violator is detained in another state pursuant to [a parole violation warrant] * * *, the warrant will not be deemed to be executed until the alleged violator is detained exclusively on the basis of such warrant and the division of parole has received [the necessary notification regarding extradition of the alleged violator]. The alleged violator will not be considered to be within the convenience and practical control of the division of parole until the warrant is deemed to be executed” (L 1984, ch 435 [emphasis added]).
Accordingly, when the Division lodges a detainer against an alleged parole violator in an out-of-state facility, the 15-day period is not triggered until the individual has completed the out-of-state sentence and is available for extradition.
Petitioner asserts that from July 1994 until November 1996, he was not being “detained in another state pursuant to [a parole violation warrant]” and thus subdivision (3) (a) (iv) cannot apply. We disagree. Because petitioner was incarcerated “in another state” when the Division lodged a detainer against him, the parole violation warrant was not deemed to be “executed” — and the 15-day period did not start to run — until petitioner was held exclusively on the strength of the New York State detainer and was available for extradition. The statute provides in absolute terms that until the warrant is deemed to be “executed,” the parolee “will not be considered to be within the convenience and practical control of the division.” Thus, as a matter of law, petitioner was not subject to the Division’s convenience and practical control — and had no right to a preliminary revocation hearing — until the federal government relinquished custody in September 1997.
*646 This workable bright-line rule reflects the Legislature’s intent. Prior to the enactment of Executive Law § 259-i (3) (a) (iv), whenever a parolee was detained in another state, the Division was faced with the task of coordinating a preliminary revocation hearing with out-of-state officials. The 1984 amendment eliminated this administrative burden. Now, when a parolee is incarcerated outside of New York, the Division simply has to lodge its detainer and wait until the out-of-state authority relinquishes custody. Subdivision (3) (a) (iv) obviates unnecessary jurisdictional entanglements while at the same time preserving the due process rights of alleged parole violators (see, Moody v Daggett, 429 US 78, 87-88 [upholding constitutionality of deferring parole revocation hearing while parolee is serving an interim sentence]).
The rule applies to petitioner. A parolee who has been temporarily brought into New York while serving a sentence in another jurisdiction is still not a New York prisoner. The purpose of subdivision (3) (a) (iv) is to relieve the Division of any continuing obligations to monitor alleged parole violators serving sentences outside of New York. It would be unrealistic to expect the Division to keep track of every alleged parole violator who is detained out-of-state and is brought temporarily within our borders for any number of reasons.
Accordingly, the order of the Appellate Division should be reversed, without costs, and the petition dismissed.
Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Graffeo concur.
Order reversed, etc.

. When parolees are serving sentences in state or local facilities in New York, courts generally enforce the 15-day time period because the parolees are within the convenience and practical control of the Division (see, People ex rel. Brown v New York State Div. of Parole, 70 NY2d 391, 398-399 [“A parolee is in a place ‘subject to the convenience and practical control’ of the (Division) when he is in the custody of a correctional facility as an inmate with which the Parole Board has parole jurisdiction.”] [citing Matter of Beattie v New York State Bd. of Parole, 39 NY2d 445, 447]).

. As the Appellate Division majority noted, the Division relied exclusively on the Supreme Court’s “convenience and practical control” analysis in arguing for an affirmance. The Division did not argue that Executive Law § 259-i (3) (a) (iv) applied. It did, however, make that argument at the trial level. The issue is therefore preserved for our review (see, Matter of Couch v Perales, 78 NY2d 595, 605 n 5; Matter of Seitelman v Lavine, 36 NY2d 165, 170 n 2 [“This court will consider a question that has been raised in the tribunal of original jurisdiction even though it may not have been argued in the Appellate Division.”]; Telaro v Telaro, 25 NY2d 433, 437-438 [expressly rejecting argument that party “abandoned or waived” an argument by failing to raise it at the Appellate Division]).

. See, Budget Report, Bill Jacket, L 1984, ch 435; see also, Division of Probation Mem, Bill Jacket, L 1984, ch 435 (noting that proposed amendment will “eliminate present difficulties experienced by the Division of Parole”); Executive Chamber Mem, Kurlander to Grotty, Bill Jacket, L 1984, ch 435 (calling the proposed amendment a “more equitable way of assuring that due process is afforded to the alleged violator without imposing undue administrative burden on the State”).